J-S22002-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JACQUELINE ROHRBAUGH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL P. ROHRBAUGH | : | No. 1540 MDA 2024 |

Appeal from the Order Entered September 19, 2024
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2015-CV-4889-DC

BEFORE:   LAZARUS, P.J., BOWES, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.:                    **FILED DECEMBER 16, 2025**

Jacqueline Rohrbaugh (Mother) appeals from the order, entered in the Court of Common Pleas of Dauphin County, finding her in willful contempt of the trial court's March 4, 2022, June 17, 2024, and June 21, 2024 custody orders, sentencing her to six months of probation, placing her on electronic monitoring when she exercises her periods of supervised custody in Pennsylvania during the probationary term, assessing her a $200.00 fine, and ordering her to pay $2,500.00 in counsel fees to Appellee Michael P.

_____

[*] Former Justice specially assigned to the Superior Court.

Rohrbaugh (Father).[1]  After careful review, we affirm[2] and deny Mother's *pro se* request for sanctions.

Mother and Father were married on September 2, 2000, and are the parents of P.R. (born June 2012) and G.R. (born October 2013) (collectively,

_____

[1] We recognize that "[t]he law is well[-]settled that there is no right to counsel in civil cases." **Rich v. Acrivos**, 815 A.2d 1106, 1108 (Pa. Super. 2003), citing **Witt v. LaLonde**, 762 A.2d 1109 (Pa. Super. 2000) (held no right to appointed counsel in custody/visitation case).

[2] On July 2, 2025, our Court granted Mother's *Pro Se* Emergency Request for Continuance and gave her 14 days to draft and file what Mother characterized as "important documents that this Court needs to properly review this matter." **See** Mother's *Pro Se* Notice of Attorney Substitution and Emergency Request for Continuance, 6/20/25 at 2.

In response to our order, Mother filed a "Request for Judicial Notice" on July 15, 2025, asking this Court to take judicial notice of four adjudicative facts concerning her request to disqualify her former trial judge, the Honorable Jeffrey B. Engle, for "act[ing] unlawfully," being biased against Mother, "strongly implying" that Mother had relocated Children back to California in violation of a custody order; and "strip[ping Mother] of her parental rights" without first holding a hearing, giving Mother notice of the legal action, and "manifestly fail[ing] to inquire into [the] factual allegations" in connection with Father's emergency petition for relief.  **See** Mother's Request for Judicial Notice, 7/15/25, at 2-3.

In her July 15, 2025 filing, Mother also filed a "Supplemental Statement of Errors and Supplemental Brief."  On August 18, 2015, we entered an order remanding the matter to the trial court "for the purpose of addressing Mother's [] 'supplemental statement of errors' [and to] determine whether the court should accept Mother's supplemental issues *nunc pro tunc*."  Order, 8/18/25, at 1.  The order further provided that if the trial court grants Mother permission to supplement her Rule 1925(b) statement *nunc pro tunc*, the trial court shall issue a supplemental Rule 1925(a) opinion.

Children).[3]  On June 19, 2015, Mother filed a complaint in divorce seeking, among other things, primary physical custody of Children.  **See** Complaint in Divorce, 6/19/15, at 4 (unpaginated).

Relevantly, on March 4, 2022, the court entered a final order giving the parties shared legal and physical custody of Children if "Mother's physical residence is within a 25-mile radius of 2200 Parkway West, Harrisburg[, Pennsylvania]."  Order, 3/4/22, at 2.[4]  However, if Mother's physical residence is outside of that 25-mile radius, then Father was to have primary physical custody and Mother was to have partial physical custody of Children during summer break.  **See id.** at 2-3.  The custody order also contained the following provision:

**<u>CONTEMPT</u>**

30.  The custody schedule, rules of conduct[,] and other provisions of this [c]ourt [o]rder are binding on all parties.  **If a parent does not follow any provision in this [o]rder, that violation could become the subject of contempt proceedings** before this [c]ourt punishable by any one or more of the following:

A.  Imprisonment for a period of not more than six (6) months.

B.  A fine up to $500.00.

C.  Payment of opposing party's attorney's fees and costs.

---

[3] The parties are also the biological parents of B.R. (born April 2003) and L.R. (born August 2005).  Because B.R. and L.R. are no longer minors, they are not involved in this matter.

[4] For a more detailed procedural history of this custody case, see Mother's appeal at 1539 EDA 2024.  **See also infra** at n.7.

> 31. A finding of [c]ontempt may also constitute grounds for modification of the legal and physical custody provisions contained in this [o]rder.

*Id.* at 6-7 (emphasis added). Mother exercised her custodial rights in the summer of 2022 and took the Children to California. However, when she failed to return Children to Father in Pennsylvania by August 15, 2022, "Father traveled to California to search for [C]hildren[.]" Trial Court Opinion, 9/19/24, at n.3. Ultimately, Children "appeared at the home of Maternal Grandparents on August 17th or 18th [and] Mother relocated back to Pennsylvania in the [f]all of 2022." *Id.*

On June 17, 2024, Father filed a petition seeking emergency relief, alleging that Mother failed to appear for a custody exchange on Father's Day weekend, June 15-16, 2024. The court entered an order granting Father's petition and directing that Mother return Children immediately to Father, ordering a warrant be issued for Mother's arrest if she failed to return Children to Father, temporarily suspending Mother's custodial rights to Children, and scheduling a contempt hearing. *See* Order, 6/17/24; *see also* Amended Order, 6/18/24.[5] On June 17, 2024, Mother sent Father an email stating "This is my residence address in California. You should already have that information because it is where Nathan and I have been sharing a home previously, but I wanted to make sure you had it." Email from Jacqueline Rohrbaugh to Patrick Rohrbaugh (June 17, 2024, 01:40 PM) (entered as exhibit at Contempt Hearing).

_____

[5] The amended order is the same in all respects as to the original order, with one correction of a child's name.

On June 21, 2024, the court entered an order granting Father sole legal and physical custody of Children, directing Mother to deliver Children immediately to Father, issuing an arrest warrant for Mother, and requesting the prosecutor take "any lawful action to locate and obtain the return of [C]hildren pursuant to 23 Pa.C.S.[A.] §[§] 5455(a)(1), (2)[,] and (4)." Order, 6/21/24, at 1. Children were ultimately returned to Father on the evening of June 23, 2024.[6] Mother turned herself in to Pennsylvania authorities on July 2, 2024, was served with an arrest warrant, charged with two counts of interference with the custody or children, *see* 18 Pa.C.S.A. § 2904, and was conditionally released from Dauphin County Prison on $1,000.00 bail on July 5, 2024. *See* N.T. Contempt Hearing, 9/16/24, at 64.

On September 4, 2024, Father filed a contempt petition against Mother alleging that she violated the court's custody orders "by refusing to communicate with [F]ather or allowing him to speak with [C]hildren . . . and then failed to relinquish [C]hildren to [F]ather for Father's Day and, in fact, absconded to California with [C]hildren [and] refused to tell [F]ather where [C]hildren were altogether." Petition for Contempt, 9/4/24, at 1-2. The trial court held a contempt hearing on September 16, 2024, at which Mother and

---

[6] In response to the court's emergency order, on June 23, 2024, Mother put Children alone on an evening flight from Oregon to Baltimore without telling Father any flight details or arrangements. *See* N.T. Contempt Hearing, 9/16/24, at 63. When Mother attempted to have maternal grandparents pick Children up from the Baltimore airport, grandparents called Father and told him about the situation. Father picked Children up "at approximately 11:30 p.m. in Baltimore." *Id.* at 39-40.

Father testified. On September 19, 2024, the court entered an order finding Mother in contempt for willfully violating the court's March 4, 2022, June 17, 2024, and June 21, 2024 orders, concluding that she knew of the three orders and "willfully chose to violate those orders [and] specifically sought to deprive Father of his physical custody rights under [those] orders." **See** Order, 9/19/24, at 1.[7] Mother was sentenced to 6 months of supervised probation, was placed on administrative "call in" status when she resides in California, was ordered to be on electronic monitoring when exercising her custodial periods in Pennsylvania while on probation, was assessed a $200.00 fine, along with costs of the proceedings, and was ordered to pay $2,500.00 to Father in counsel fees. **Id.** at 2.

Mother filed a timely notice of appeal from the contempt order and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On June 23, 2025, Mother's counsel, Daniel J. Devlin, Esquire, filed a motion to withdraw in this Court, claiming that "since [he was] retained by [Mother, they] have reached an irreparable impasse with regard to how to prosecute this matter [and Mother] has advised [counsel] of her intent to

_____

[7] Following a hearing, on September 19, 2024, the trial court entered a final custody order granting Father sole legal and primary physical custody and Mother partial supervised physical custody of Children. The order also states that Mother's supervised custody shall take place solely in Dauphin, Cumberland, or Lancaster Counties. Moreover, the order requires that Mother wear an electronic monitoring device, administered by the County Adult Probation Department, when she exercises her visitation with Children in Pennsylvania. **See** Order, 9/19/24, at 1-2. Mother has filed an appeal from that order at 1539 MDA 2024.

represent herself in this matter moving forward." Motion to Withdraw as Counsel, 6/23/25, at 1. On June 27, 2025, Mother filed a response to Attorney Devlin's motion, requesting that this Court deny the motion to withdraw as moot, find Attorney Devlin's motion frivolous as a matter of law, and impose monetary sanctions against Attorney Devlin. **See** Appellant's Opposition to Devlin's Motion to Withdraw, 6/27/25, at 1. On August 5, 2025, we granted counsel's application to withdraw, permitted Mother to proceed *pro se* on appeal, and denied Mother's request to impose sanctions against Attorney Devlin. **See** Order, 7/30/25.

Subsequently, Mother filed an application for relief that included a supplemental Rule 1925(b) statement including two additional issues for our appellate review, claiming that Attorney Devlin had materially misrepresented her position. On August 18, 2015, we entered an order remanding the matter to the trial court "for the purpose of addressing Mother's [] 'supplemental statement of errors' [and to] determine whether it should accept Mother's supplemental issues *nunc pro tunc*." Order, 8/18/25, at 1. The order further provided that if the trial court grants Mother permission to supplement her Rule 1925(b) statement, the trial court shall issue a supplemental Rule 1925(a) opinion. **Id.**

On August 25, 2025, the trial court issued a memorandum and order denying Mother's request to file a supplemental Rule 1925(b) statement *nunc pro tunc*, concluding that Mother's disagreement with the content of prior counsel's Rule 1925(b) statement does not constitute a non-negligent reason

or show good cause to permit her to amend her statement eight months later. *See* Memorandum and Order, 8/25/25, at 3 (unpaginated). *See* Pa.R.A.P. 1925(c)(2) ("[u]pon application of the appellant and for good cause shown, an appellate court may remand in a civil case for the filing or service *nunc pro tunc* of a Statement or for amendment or supplementation of a timely filed and served Statement and for a concurrent supplemental opinion"); Pa.R.A.P. 1925, Note ("In general, *nunc pro tunc* relief is allowed only where there has been a breakdown in the process constituting extraordinary circumstances.").[8] Thus, we will address only the following issues that Mother raised in her original Rule 1925(b) statement:

    (1)    Whether the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in entering the [c]ontempt [o]rder of September 19, 2024[,] and finding [Mother] in contempt of court, since the facts, evidence[,] and record in this matter do not demonstrate that the actions of [Mother that] were complained of were volitional, or that [Mother] acted with wrongful intent.

---

[8] Mother filed a response to the court's August 25, 2025 memorandum and order asking this Court to "strike" the trial judge's memorandum and order and accept her supplemental issues. *See* Appellant's Response to Judge Engle's "Memorandum and Order" Dated August 25, 2025, at 2, 7. We reiterate that Rule 1925 is a tool used by a trial court, not the appellate courts, to explain its rulings on issues raised by a party on appeal. Moreover, as the note to Rule 1925 states, *nunc pro tunc* supplementation of a party's Rule 1925(b) statement is permitted only under extraordinary circumstances. Those are not present here. Additionally, Mother's October 20, 2025 letter to this Court stating that Judge Engle "should not be responding or writing orders related to any of [her] cases" because he recused from the matter on May 8, 2025, is of no moment. Letter, 10/20/25. This appeal was taken from the September 19, 2024 order issued by Judge Engle, well before the ruling on Mother's recusal motion. Thus, Judge Engle is the appropriate jurist to rule upon whether Mother should be permitted to supplement her Rule 1925(b) statement on appeal from his custody order.

(2)     Whether the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in entering the [c]ontempt [o]rder of September 19, 2024[,] and finding [Mother] in contempt of court, since the facts, evidence[,] and record in this matter do not demonstrate that the actions of [Mother that] complained of were intended to deprive [Father] of his custodial rights.

(3)     Whether the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in entering the [c]ontempt [o]rder of September 19, 2024[,] and finding [Mother] in contempt of court, since the facts, evidence[,] and record in this matter do not demonstrate that [Mother] had the present ability to comply with the [o]rder of June 17, 2024, [a]mended [o]rder of June 18, 2024[,] or the [o]rder of June 21, 2024.

(4)     Whether the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in entering the [c]ontempt [o]rder of September 19, 2024, since the [c]ourt did not address the actual dangers to the children which were testified to in this matter.

Appellant's Brief, at 5-6.

Mother claims that "the evidence and testimony presented [at the September 16, 2024 hearing] was insufficient to demonstrate that [her] actions . . . were volitional or that she acted with wrongful intent [to justify a finding of] willful contempt[.]" *Id.* at 13-14.  In addition to claiming that the trial court's contempt finding is not supported by the law and the evidence of record, she also asserts that the court abused its discretion in ordering her to reimburse Father for his counsel fees and costs.  *Id.* at 10.

Enforcement of custody orders though the contempt process is provided for in Pennsylvania Rule of Civil Procedure 1915.12.  "A court may exercise its civil contempt power to enforce compliance with its orders for the benefit of the party in whose favor the order runs but not to inflict punishment." *Sinaiko v. Sinaiko*, 664 A.2d 1005, 1009 (Pa. Super. 1995).  In order to find a party

- 9 -

in civil contempt, the following elements must be proven by a preponderance of the evidence: "(1) that the contemnor had notice of the specific order or decree which [s]he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." *Stahl v. Redcay*, 897 A.2d 478, 489 (Pa. Super. 2006) (internal citation omitted).

Moreover,

[w]hen considering an appeal from an [o]rder holding a party in contempt for failure to comply with a court [o]rder, our scope of review is narrow: we will reverse only upon a showing the court abused its discretion. *Hyle v. Hyle*, [] 868 A.2d 601 (Pa. Super. 2005)[.] The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason. *Id.*

*Harcar v. Harcar*, 982 A.2d 1230, 1234 (Pa. Super. 2009), citing *Hopkins v. Byes*, 954 A.2d 654, 655-56 (Pa. Super. 2008). Finally, "this Court defers to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor." *Garr v. Peters*, 773 A.2d 183, 189 (Pa. Super. 2001) (citations omitted).

Section 5323 of Pennsylvania's Domestic Relations Code governs punishment for contempt in custody actions as follows:

**(g) Contempt for noncompliance with any custody order.**

**(1)** A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:

　**(i)** Imprisonment for a period of not more than six months.

　**(ii)** A fine of not more than $500.

- 10 -

**(iii)** Probation for a period of not more than six months.

**(iv)** An order for nonrenewal, suspension[,] or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).

**(v)** Counsel fees and costs.

23 Pa.C.S.A. § 5323(g)(1). As subsection 5323(g)(1)(v) states, counsel fees are a proper sanction for contempt for noncompliance with a custody order. *See id.* at § 5323(g)(1)(v); *see also Rhoades v. Pryce*, 874 A.2d 148, 152 (Pa. Super. 2005) (imposition of counsel fees constitutes contempt sanction); *Harcar*, *supra* at 1234 ("Attorney['s] fees may be assessed as a sanction for [a] contemnor's refusal to comply with a court [o]rder, causing the innocent party to incur fees in an effort to obtain what was rightfully his.") (citations omitted). Finally,

> If the alleged contemnor is unable to perform and has, in good faith, attempted to comply with the court order, then contempt is not proven. The contemnor has the burden to prove the affirmative defense that [s]he lacks the ability to comply. The defense of impossibility of performance is available to a party in a contempt proceeding if the impossibility to perform is not due to the actions of that party.

*Thomas v. Thomas*, 194 A.3d 220, 226 (Pa. Super. 2018) (formatting altered and citations omitted).

Instantly, Mother claims that she reviewed the court's March 4, 2022 order and reasonably interpreted it as permitting her to relocate to California for the summer with Children since her residence is located in that state. Accordingly, she argues that the court's order is not clear and she did not act with wrongful intent.

The court's March 4, 2022 custody order provides, in relevant part:

> If Mother's physical residence is outside a 25-mile radius of 2200 Parkway West, Harrisburg, Pennsylvania[,] 17112, Father shall have primary physical custody of [C]hildren, and Mother shall have partial physical custody of [C]hildren as follows:
>
> (A)    Mother shall have physical custody of [C]hildren for the school summer break commencing at 6:00 p.m. on the Sunday that falls between seven (7) and fourteen (14) days following the last day of the school [year] and ending at 6:00 p.m. on the Sunday that falls between fourteen (14) and twenty-one (21) days before the start of the next school year.

Order, 3/4/22, at 2-3. The custody order, however, also contains a "Holiday" schedule that gives Father custody of Children from 6:00 p.m. the day before Father's Day until 6:00 p.m. on Father's Day. *Id.* at 4. Pursuant to the order, "[t]he holiday schedule shall take priority over the regular and vacation custody schedules set forth[.]" *Id.* at 3. Finally, the court's order specifically states that "[i]f a parent does not follow any provision in this Order, that violation could become the subject of contempt proceedings before th[e trial c]ourt [and be subject to punishment]." *Id.* at 6-7.

Mother is correct that the court's March 4, 2022 order did not specifically require her to "contact or discuss her decision with Father []or [have] her attorney contact Father's counsel" before taking Children to California during the school summer break.[9] Trial Court Memorandum Opinion, 9/19/24, at 3.

_____

[9] The parties' custody order requires a party to

> provide the other party with the address and telephone number where the children will be during any vacation away from the parents' primary physical residence. Once they have arrived at their destination, the custodial party will provide reasonable notification that the children have arrived safely at the vacation

*(Footnote Continued Next Page)*

However, the order did explicitly require Mother to return Children to Father the day before Father's Day. **See** Order, 3/4/22, at 4.

It is well-established that "a mere showing of noncompliance with a court order. . . is never sufficient to prove civil contempt." **Thomas**, **supra** at 226. Rather, "the act constituting the violation must be deliberate, and the act of the alleged contemnor must have been done with improper intent." **Sutch v. Roxborough Mem'l Hosp.**, 142 A.3d 38, 68 (Pa. Super. 2016) (citations omitted). **See id.** ("Unless the evidence establishes an intentional disobedience or an intentional disregard of the lawful process of the [trial] court, no contempt has been proven.") (citation omitted). When determining whether a party acted with wrongful intent to support a finding of contempt, the trial court "should use common sense and consider context[;] wrongful intent can be imputed to a [party] by virtue of the substantial certainty that his actions will violate the court order." **Gross v. Mitz**, 284 A.3d 479, 493 (Pa. Super. 2022) (citation omitted).

_____

destination and[,] thereafter[,] notify the other party that they have returned safely.

Order, 3/4/22, at 3. The order, however, does not state Mother's primary physical residence. Moreover, since Mother has, at times during this custody matter, resided in California, this Court does not believe her trip to California in June 2024 constituted a "vacation" as defined under the custody order. **See also** N.T. Contempt Hearing, 9/16/24, at 26 (Father testifying at contempt hearing he did not know where Mother resides or lives).

- 13 -

It is undisputed that Mother failed to return Children to Father's on June 15, 2024, the day before Father's Day.[10]  In fact, Mother testified that she "departed [for California with Children] on June 15."  N.T. Contempt Hearing, at 9/16/24, at 56.  Mother also failed to respond to Father's request to provide him with Children's travel details for their return to Pennsylvania.  This was a direct violation of the parties' custody orders.  **See** Order, 3/4/22, at 3-4. Further, Mother failed to return Children "to Father's custody immediately" as ordered by the court on June 17, 2024, in response to Father's emergency petition.  **See** Order 6/17/24.  **See id.** ("A warrant shall be issued for Mother's arrest effective June 21, 2024[,] at 10:00 AM should she fail to return [C]hildren to Father.").  **See Gross**, **supra** at 493-94 (where appellant explicitly violated terms of two orders by withholding custody of parties' son, evidence was sufficient to show wrongful intent under preponderance of evidence standard).

To the extent that Mother claims she did not intend to violate these orders, we note that the trial court did not find Mother credible, concluding that she "willfully intended to deceive Father and the [c]ourt over the course of several years in this matter."  Trial Court Opinion, 9/19/24, at 6 (unpaginated).  The trial judge also noted that P.R. told him that "after being told by Mother that 'they were going to Cali,' or words to that effect, [Children]

_____

[10] Father testified that he agreed to allow Mother to return Children to him later on the evening of Saturday, June 15, 2024, so that she could attend a family museum trip in Philadelphia.  **See** N.T. Contempt Hearing, 9/16/24, at 13-17.

were [] told that they had to block their Father and friends on their cell phones." *Id.* at 3. As a result of this statement by P.R., "[t]he court was left with the distinct impression from [C]hildren that they were haphazardly packed and thrown into Mother's vehicle to escape from the area." *Id.* at 3-4.

As an appellate court, we defer to the trial court's credibility determinations. *See Garr*, *supra*. Where Mother has repeatedly failed to return Children to Father over the course of this sadly protracted custody matter, the court acted within its discretion in imputing Mother's wrongful intent based on common sense and context, as well as its interview with Children. *Gross*, *supra*. *See also* Trial Court Memorandum Opinion, 9/19/24, at 5 (trial judge noting "Mother has been found deceitful by not only Judge [Royce L.] Morris [in 2022,] but by this jurist as well."). Accordingly, we conclude that there was sufficient evidence to find Mother in contempt, punish her by imprisonment up to six months, and fine her up to $500.00. Moreover, having concluded that Mother willfully failed to comply with the court's custody order, she was properly ordered to reimburse Father for the fees he incurred in litigating the contempt petition.[11] *See* 23 Pa.C.S.A. § 5323(g)(1).

Mother next contends that she did not have the "present ability to comply with the applicable [custody o]rders," where the court's order was

---

[11] Notably, Father had to involve his lawyer and the police to ascertain the whereabouts of Children. *See* N.T. Contempt Hearing, 9/16/24, at 17, 32.

entered on June 20, 2024,[12] and "it was impossible for her to return the Children to Father immediately, let alone by June 21, 2024." *Id.* at 16-17. Specifically, Mother claims that she "did not have sufficient notice of the entry of any of the [o]rders [and] she did the best she could to ensure [C]hildren were returned to Father's custody as soon as possible." *Id.* at 17.[13]

Mother improperly focuses her argument on her inability to comply with the court's June 17, 2024 emergency order, rather than explaining why she was unable to comply with parties' original custody order, dated March 4, 2022, that required her to return Children the day before Father's Day on June 15, 2024. The parties' holiday custody schedule, set forth in a two-year-old order, is clear and unambiguous. Because Mother had sufficient notice of the

_____

[12] Mother incorrectly states that the court's order was not entered until June 20, 2024. In fact, the docket shows that the court's order was distributed to the parties on June 17, 2024.

[13] To the extent Mother claims she attempted "in good faith" to return the Children to Father, we note that:

> If the alleged contemnor is unable to perform and has, in good faith, attempted to comply with the court order, then contempt is not proven. The contemnor has the burden to prove the affirmative defense that he lacks the ability to comply. The defense of impossibility of performance is available to a party in a contempt proceeding if the impossibility to perform is not due to the actions of that party.

*Thomas*, 194 A.3d at 226 (formatting altered and citations omitted). Mother's good faith argument is based upon her attempt to return Children to Father "[a]fter being advised of the Emergency Petition and the issuance of the [t]rial [c]ourt's subsequent [o]rders on June 20, 2024." Appellant's Brief, at 17. As explained above, Mother fails to prove this affirmative defense as it relates to the parties' underlying March 2022 custody order and its provisions requiring her to return Children to Father by June 15, 2024. *Thomas*, *supra*.

March 2024 order that she clearly disobeyed, we find no merit to this claim. ***Stahl***, ***supra***.

Finally, Mother asserts that the trial court erred when it did not address the actual dangers to the children. Specifically, Mother contends that, prior to entering the contempt order, the court was required to conduct an analysis of the custody factors, set forth at 23 Pa.C.S.A. § 5328(a), "to address any actual dangers to the Children." Appellant's Brief, at 19.

While a trial court must have the best interests of the child in mind at all times in a custody matter, the Child Custody Act[14] only requires a court consider the section 5328(a) factors when it is "**ordering any form of custody**." ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014) (emphasis added); 23 Pa.C.S.A. § 5328 (section titled "Factors to consider when awarding custody") (emphasis added). Thus, the court was not required to analyze the section 5328(a) factors when it ruled on Father's contempt petition.

Order affirmed.

---

[14] 23 Pa.C.S.A §§ 5301-5366.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 12/16/2025